IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03189-PAB-MEH

WILLIAM MONTGOMERY,

     Plaintiff,

v.

ARMANDO CRUZ,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Plaintiff William Montgomery, proceeding *pro se*, alleges a violation of his constitutional rights under the Fourth Amendment. Compl., ECF 1. He brings his claim pursuant to 42 U.S.C. § 1983. *Id*. Before the Court is Defendant's Motion for Summary Judgment. ECF 76. For the following reasons, the Court respectfully recommends granting Defendant's Motion.

## **FINDINGS OF FACT**

     The Court makes the following findings of fact, viewed in the light most favorable to the non-moving party, the Plaintiff, in this matter. The Court also does not consider evidence submitted by either Party which is not material to the Motion, properly objected to, and/or inadmissible. The following material facts are undisputed.

1.    On October 23, 2018, Plaintiff visited the Walmart located at 7800 Smith Road in Denver, Colorado. Compl., ¶ 5.

2.    At approximately 4:45 p.m., Walmart employee Angelo Germain observed Plaintiff leaving the store with merchandise without a bag and no sign of a receipt. ECF 76-3 at 1.

3.      Mr. Germain asked Plaintiff to show his receipt. *Id.* Plaintiff was immediately "stand offish" to Mr. Germain, refused to show his receipt, and proceeded toward the door. ECF 76-4.

4.      Defendant was standing outside the south exit of Walmart when he witnessed the interaction between Plaintiff and Mr. Germain. ECF 76-2, ¶ 6. Defendant overheard Plaintiff refusing to show his receipt to Mr. Germain. *Id.* ¶ 8.

5.      Plaintiff walked out of the south exit of the Walmart, with merchandise in plastic bags. *Id.* ¶ 16.

6.      Defendant asked Plaintiff to show his receipt, but Plaintiff refused. *Id.* ¶ 17.

7.      Defendant stepped in front of Plaintiff to prevent him from leaving. *Id.* ¶ 18.  Based on what Mr. Germain had told Defendant and Plaintiff's refusal to show a receipt, Defendant believed Plaintiff had shoplifted. *Id.*

8.      Plaintiff became visibly agitated. ECF 76-2, ¶ 20; 76-5 (body-camera video of incident). Plaintiff's eyes were wide, and he began shaking a large yellow bottle at Defendant while continuing to talk over Defendant. ECF 76-2, ¶ 20; 76-5.

9.      Mr. Germain observed this interaction and noted in his statement that Plaintiff began arguing with Defendant and "acting weird like he's trying to run or do something else." ECF 76-3 at 2. Mr. Germain stated that Plaintiff was talking and moving around "like someone whos [sic] mentally unstable." *Id.*

10.     Mr. Germain was so concerned with Plaintiff's behavior that he began telling other customers to use a different exit because he felt like Plaintiff "might try to do something." *Id.* Mr. Germain also called his manager, Robert Boston, to explain the situation. *Id.*

11.     Defendant informed Plaintiff "now I'm detaining you" and that "I'm gonna get your name, I'm gonna get your information." ECF 76-5.

12.     Plaintiff put the yellow bottle and plastic bag on the floor. ECF 76-2, ¶ 24; ECF 76-5.
Defendant immediately instructed Plaintiff to put his hands up and keep them where Defendant
could see them. ECF 76-2, ¶ 24; 76-5.

13.     Defendant called for backup due to Plaintiff's behavior. ECF 76-2, ¶ 26; 76-5.

14.     Plaintiff began to yell at Defendant regarding Walmart's receipt policy. ECF 76-2, ¶ 27;
76-5.

15.     Officer Chase arrived on the scene per Defendant's request. ECF 76-2, ¶ 28; 76-5.

16.     Plaintiff was then placed in handcuffs. ECF 76-2, ¶ 30; 76-5.

17.     Officer Chase asked Plaintiff if he had any weapons. ECF 76-2, ¶ 31; 76-5. Plaintiff denied
having any weapons. ECF 76-2, ¶ 31; 76-5.

18.     After Plaintiff was placed in handcuffs, Defendant began conducting a pat-down search of
Plaintiff's person to determine if Plaintiff had any weapons on him. ECF 76-2, ¶ 32; 76-5.

19.     Plaintiff began yelling. ECF 76-5.

20.     Defendant removed a wallet, pill bottle, phone, a white package, and liquid radiator sealer
product from Plaintiff's pockets. ECF 76-2, ¶ 34.

21.     The liquid radiator sealer product, located in Plaintiff's right front pocket, created a
"noticeable" bulge. ECF 76-2, ¶ 36; 76-5.

22.     When Defendant asked Plaintiff what the bulge was, Plaintiff hesitated and responded, "I
don't know" and "hold on." ECF 76-2, ¶ 36; 76-5.

23.     Plaintiff resumed yelling at Defendant. ECF 76-5.

24.     Officer Chase also conducted a pat-down search of Plaintiff, specifically his lower body.
*Id.*

25.    Defendant removed Plaintiff's driver's license from his wallet and informed Plaintiff "I've got your ID." ECF 76-5; 76-2 ¶ 40. Plaintiff responded "yeah, like I said, I tried to give it to you." ECF 76-5.

26.    Plaintiff was then escorted to the police vehicle. Exhibit 2, ¶ 41; 76-5.

27.    Before putting Plaintiff in the back of the police vehicle, Officer Chase again asked Plaintiff for his receipt of the merchandise. ECF 76-5. Plaintiff did not produce a receipt. *Id.*

28.    After Plaintiff was handcuffed, searched, and placed in the back of the police vehicle, Defendant asked Walmart loss prevention to conduct a CCTV [security camera] search to confirm that Plaintiff had indeed shoplifted before transporting him to the police station for booking. ECF 76-2, ¶ 43; 76-5.

## **LEGAL STANDARD**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for

summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Where, as here, the Court is presented with cross-motions for summary judgment, the Court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (internal quotations omitted).

## ANALYSIS

The operative Complaint asserts one remaining claim for unreasonable search and seizure against Defendant. *See* ECF 57. The Court will first address the legal analysis required when qualified immunity is asserted. After, the Court will analyze Plaintiff's claim.

## I.      Qualified Immunity

The doctrine of qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is an immunity from suit, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. *Id.* at 231; *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability."). The "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson*, 555 U.S. at 231–32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)). Accordingly, qualified immunity questions must be resolved at the earliest possible stage in litigation." *Id.* at 232.

When a defendant asserts qualified immunity, the plaintiff has a two-fold burden to overcome the asserted immunity: (1) "rebut the [defendant's] no-constitutional-rights arguments" and (2) "demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citing *Riggins v. Goodman*,

572 F.3d 1101, 1107 (10th Cir. 2009)); *see also Felders v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001))).  An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

Traditionally, there has been a two-step process for resolving qualified immunity questions: "First, a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001) (internal citations and quotation marks removed)).  However, the Supreme Court has afforded courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

## II.     Unreasonable Search and Seizure Absent Arguable Probable Cause (Second Claim)

Before analyzing whether the search was justified and reasonable in scope, the Court must first address what exactly transpired between Plaintiff and Defendant. "The Supreme Court has identified three general types of encounters between citizens and the police: (1) consensual

encounters; (2) investigative detentions; and (3) arrests." *United States v. Garcia*, 459 F.3d 1059, 1062–63 (10th Cir. 2006) (quoting *United States v. Hishaw*, 235 F.3d 565, 569 (10th Cir. 2000)). "[I]nvestigative detentions . . . are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity." *United States v. Davis,* 94 F.3d 1465, 1468 (10th Cir.1996). During these encounters, "[p]olice are authorized to take reasonable steps necessary to secure their safety and maintain the status quo." *Garcia*, 459 F.3d at 1063 (quoting *United States v. Gama-Bastidas*, 142 F.3d 1233, 1240 (10th Cir. 1998)). "In some circumstances, these safety measures may include a pat-down search for weapons." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21–24 (1968)). To evaluate the validity of a pat-down search, the Court must consider the "totality of the circumstances." *Id.* at 1064.

Here, Defendant argues that an arrest occurred in this case, allowing for a wider scope of search than an investigative detention or *Terry* stop. *See* Mot. at 11-12; Reply at 7. However, both Defendant and Officer Chase made clear that they intended only to detain Plaintiff for an investigation. ECF 76-5. Prior to the search, Defendant informed Plaintiff "you're gonna be detained here in just a second." *Id.* And, once Plaintiff had been placed in handcuffs, Officer Chase confirmed "you're being detained right now per an investigation." *Id.* Moreover, in *Montgomery v. Calvano*, the Tenth Circuit delineated an initial investigatory detention and arrest with nearly identical facts. No. 21-1134, 2022 WL 1132212, at *1 (10th Cir. Apr. 18, 2022). The court found that "Calvano *detained* Montgomery while Walmart employees investigated whether Montgomery paid for the cheese. About 15 minutes later . . . Calvano arrested Montgomery for shoplifting . . . ." *Id.* (emphasis added).

Additionally, the use of handcuffs did not transform the investigative detention into an arrest. *See United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993). "Although *Terry* stops are

normally non-intrusive, we have indicated that law enforcement may (1) display some force, (2) place suspects on the ground, (3) use handcuffs, or (4) detain suspects in law enforcement vehicles, even in the absence of probable cause."  *Cortez v. McCauley*, 478 F.3d 1108, 1130 (10th Cir. 2007).  The Tenth Circuit has "upheld officers' brandishing of firearms and use of handcuffs during an investigatory *Terry* stop, [in cases in which] the officers generally either knew or had reason to believe the suspects were armed, or they had personally witnessed the suspects acting violently." *Soza*, 686 F. App'x at 568 (10th Cir. 2017) (citing cases). Thus, the Court concludes that Plaintiff was initially stopped and searched as part of an investigative detention, and was not placed under arrest prior to the search.

Finally, Defendant argues that Plaintiff's arrest was "bolstered by the fact that Plaintiff was then escorted to a police vehicle, placed inside that vehicle while still handcuffed, and the door was such." Reply at 7. However, even if the Court were to find that an arrest occurred at this point, "a search incident to a lawful arrest may not precede the arrest and serve as part of its justification." *Sibron v. New York*, 392 U.S. 40, 67 (1968). The search in question occurred *prior* to Plaintiff's confinement to the police vehicle, and therefore the Court declines to initially analyze it as a search incident to arrest.

Regarding the investigative detention, two competing issues are now before the Court. First, whether Defendant could reach into Plaintiff's pockets immediately after placing him in handcuffs.  Second, whether Defendant had reasonable suspicion to conduct a pat-down search in the first place.  The Court will consider the latter issue first since it is the broader question.

A.    Justification for the Search

A pat-down search, or frisk, is constitutionally valid only if it is reasonable. U.S. Const. amend. IV; *Terry*, 392 U.S. at 19. "Although it is of course true that officers need not be absolutely

certain that [an] individual is armed before taking protective measures such as a pat-down search, such a search is also not to be conducted as a matter of course during every investigative detention." *Garcia*, 459 F.3d at 1063–64 (internal citations and quotation marks omitted). An officer is permitted to "conduct a pat[-]down search (or 'frisk') if he or she 'harbors an articulable and reasonable suspicion that the person is armed and dangerous.'" *Id.* at 1064 (quoting *U.S. v. Hishaw*, 235 F.3d 565, 570 (10th Cir. 2000)).

The circumstances necessary to arouse reasonable suspicion fall considerably short of satisfying a preponderance of the evidence standard. *United States v. Garcia*, 751 F.3d 1139, 1143 (10th Cir. 2014) (citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). It must meet only a "minimum level of objective justification." *United States v. Rice*, 483 F.3d 1079, 1083 (10th Cir. 2007) (quotation omitted). In analyzing reasonable suspicion, a court does not "consider each of an officer's observations in isolation, but rather" considers "the totality of the circumstances, taking into account an officer's reasonable inferences based on training, experience, and common sense." *Garcia*, 751 F.3d at 1143 (quotation omitted); *United States v. Fager*, 811 F.3d 381, 386 (10th Cir. 2016) ("[A] reasonable suspicion analysis is still first and foremost a multi-factor test based on the totality of the circumstances."). The totality of the circumstances test looks at the officer's knowledge and observations as well as the circumstances in which the officer is working. *Rice*, 483 F.3d at 1084–85.

The primary justification for a pat-down search is an officer's concern "that [his or her] safety or that of others was in danger." *Terry,* 392 U.S. at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* The Tenth Circuit has held that officer safety concerns have justified a pat-down search in

circumstances in which the officer had limited specific information leading him to believe that an individual was armed or dangerous and no knowledge of the individual's having possessed a weapon. *See Garcia*, 751 F.3d at 1142; *see also United States v. McRae,* 81 F.3d 1528, 1536 (10th Cir. 1996) (concluding an officer had reasonable suspicion to perform a pat-down search of McRae because the officer might be compelled to turn his back to McRae to search a car, he was alone with McRae on an isolated stretch of highway, he received information that McRae had a criminal history, McRae put on his jacket before exiting his vehicle, and "a jacket is a likely place in which to store a weapon"); *see also United States v. Manjarrez,* 348 F.3d 881, 886–87 (10th Cir. 2003) (concluding the officer "could not reasonably be expected to leave [d]efendant in his patrol car, turn his back on [d]efendant . . . and search the car without first checking [d]efendant for weapons" even when the officer had no knowledge of any previous criminal history and the defendant was not acting suspiciously). Additionally, other factors that can influence an officer's reasonable suspicion include (but are not limited to) the time of day when and the place where the pat-down occurred, any previous encounters the officer had with the defendant, the defendant's criminal history, the defendant's nervousness, and the defendant's history of drug use. *Garcia,* 751 F.3d at 1144–47.

In this case, Plaintiff attempted to leave the store wearing dark, baggy clothes. ECF 76-5. Once stopped, Plaintiff continually talked over Defendant while shaking a large yellow bottle at him. *Id.* The accounts of at least two Walmart employees confirm that Plaintiff acted "stand offish" and "mentally unstable." ECF 76-4; 76-3 at 2. Defendant, Mr. Germain, and Mr. Boston all noted irregularities with Plaintiff's behavior. ECF 76-2, ¶ 20 (describing Plaintiff as "agitated and argumentative"); 76-3 (noting that Plaintiff was "acting weird . . . talking, moving around like someone whos [sic] mentally unstable'); 76-4 (observing that Plaintiff was "immediately stand

offish towards Angelo"). Defendant also states that "[i]n [his] frequent experience dealing with shoplifters, these individuals often carry all kinds of weapons, including makeshift and homemade weapons." ECF 76-2, ¶ 39. An item in Plaintiff's pocket created a "noticeable" bulge, and Plaintiff hesitated to explain was it was. *Id.* ¶ 36. Certainly, "a visible and suspicious 'bulge' in [a] pocket may alone 'permit[ ] the officer to conclude that [the suspect] was armed and thus posed a serious and present danger to the safety of the officer.'" *United States v. Gurule*, 935 F.3d 878, 886 (10th Cir. 2019), *as revised* (Oct. 10, 2019), *cert. denied*, 140 S. Ct. 1285 (2020).

Moreover, Defendant and Officer Chase repeatedly told Plaintiff that they were searching for weapons throughout the course of the pat down. ECF 76-5. Defendant specifically asked whether another item in Plaintiff's pocket was a knife. ECF 76-5. Thus, the Court finds Defendant had reasonable suspicion to search Plaintiff.

B.   Scope of the Search

Though Defendant had an articulable, reasonable suspicion that Plaintiff was armed and dangerous, there is not enough conclusive evidence on the record to find that their method of conducting the pat-down search was reasonable. On this issue, Plaintiff cites to *Sibron v. New York*, 392 U.S. 40, 65 (1968). In that case, the Supreme Court held, in part, that an officer's *Terry* stop to search for narcotics was unlawful because the scope of the officer's search was not limited to determining whether the suspect was armed. *Id.* The Court explained,

> The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault. Only when he discovered such objects did the officer in *Terry* place his hands in the pockets of the men he searched. In this case, with no attempt at an initial limited exploration for arms, Patrolman Martin thrust his hand into Sibron's pocket and took from him envelopes of heroin. His testimony shows that he was looking for narcotics, and he found them. The search was not reasonably limited in scope to the accomplishment of the only goal which might conceivably have justified its inception—the protection of the officer by disarming a potentially dangerous man. *Id.*

The Court emphasized that the officer "made it abundantly clear that he sought narcotics" when he reached into the suspect's pocket instead of looking for a weapon. *Id.* at 64.

The Tenth Circuit has interpreted *Sibron* as standing for the proposition that "the search for weapons should be a limited intrusion." *United States v. Santillanes*, 848 F.2d 1103, 1109 (10th Cir. 1988). In *Santillanes*, a detective and another officer received a tip that a felon would be arriving at the airport. *Id.* at 1104. At the airport, the detective recognized an individual who he had arrested a month earlier for possession of heroin with intent to distribute. *Id.* The detective called out to the individual who, on hearing his name and seeing the detective, started to walk away at an increased pace. *Id.* at 1105. The detective caught up to the individual, stopped him, and asked him what he was doing. *Id.* After the individual responded, "You know what I am doing," the detective and the officer immediately patted him down. *Id.* They found no weapons but proceeded to reach into the individual's pockets where they discovered a beer can and a roll of money. *Id.* The Tenth Circuit found that these actions "exceeded the scope of a permissible frisk." *Id.* at 1109. Citing *Sibron*, the court noted that the "search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects." *Id.* (quoting *Sibron*, 392 U.S. at 65). Because "the detective went beyond patting [the individual's] outer clothing[,]" the court held that the "detective's conduct in this case cannot be considered minimally intrusive." *Id.*

Here, Plaintiff contends that "[Defendant] barely squeeze[d] Plaintiff's left jacket pocket before inserting one of his hands into it . . . and he barely brushe[d] one of his hands along the outside of Plaintiff's two rear pant pockets before inserting it into the rear left one." Resp. at 9-10. Defendant states that he conducted a pat down but does not provide a detailed account of how exactly he searched for weapons in Plaintiff's pockets. ECF 76-2, ¶ 32. The body camera footage

shows that Defendant searched Plaintiff's left jacket pocket, but it is unclear how thoroughly Defendant patted down the outer portion of Plaintiff's jacket pocket before inserting his hand in the pocket. *See* ECF 76-5. Whether this pat-down search was minimally intrusive is a dispute of fact that must be left to the jury. Therefore, the Court provisionally finds an outstanding issue of material fact as to whether the pat-down search exceeded the scope of a permissible *Terry* stop. *Santillanes*, 848 F.2d at 1109.

       1.     Probable Cause

Assuming Defendant's pat-down search was unreasonable, the Court next assesses whether Defendant had probable cause to support his actions. "[I]f police officers' actions exceed what is reasonably necessary under the totality of the circumstances, the stop may only be justified by probable cause or consent." *United States v. Melendez-Garcia*, 28 F.3d 1046 (10th Cir. 1994). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (quotation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Ultimately, all that matters is whether the officer possessed knowledge of evidence that would provide probable cause to arrest the individual on some ground." *Holmes*, 830 F.3d at 1139 (quotation omitted) (emphasis in original).

As to whether the law was clearly established at the time of the alleged violation, a Section 1983 plaintiff must show that "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (quotation omitted). Under this standard, if there was "arguable probable cause" for the arrest, the

defendant is entitled to qualified immunity. *Id.* (quoting *Cortez*, 478 F.3d at 1121) (emphasis added); *see also Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) ("[T]he defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991))). Thus, an official who reasonably but mistakenly concludes that probable cause is present is entitled to immunity. *A.M. v. Holmes*, 830 F.3d at 1139-40.

Under nearly identical facts involving this Plaintiff, the Tenth Circuit has held that "where the officer personally witnessed some facts supportive of probable cause that the suspect had shoplifted; the officer asked the suspect about it, and the suspect did not deny shoplifting the items in question; and store employees told the officer the suspect had, in fact, stolen the items," the officer had not violated a clearly established law. *Montgomery v. Calvano*, No. 21-1134, 2022 WL 1132212, at *2 (10th Cir. Apr. 18, 2022). Here, Defendant did witness Plaintiff's attempts to exit the store, and he conducted an investigation. ECF 76-5. Both Defendant and Mr. Germain asked Defendant for his receipt. ECF 76-3 at 1; 76-2, ¶ 17. Finally, Plaintiff never denied shop lifting and never produced a receipt. *See* ECF 76-1.

Plaintiff also argues that even if the search was lawful, the seizure of his ID was not because that occurred after Defendant had searched his pockets. Resp. at 10. However, Plaintiff explicitly told Defendant that he was going to give Defendant his ID anyway, which confirms his valid consent to that seizure. *See United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir. 1993) (finding "[v]alid consent may be given by a person being detained"); *see also Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (finding that non-verbal consent can constitute valid voluntary consent).

Moreover, Plaintiff cites no case law which clearly establishes that Defendant lacked probable cause to search Plaintiff in this instance. Absent such a case (which the Court

independently could not find either), it is not clearly established that Defendant lacked arguable probable cause in this case. The Court recommends a finding that Defendant is entitled to qualified immunity on Plaintiff's last remaining claim.

## CONCLUSION

The Court respectfully recommends that Defendant's Motion [filed October 17, 2022; ECF 76] be **granted**.[1]

Respectfully submitted this 1st day of February, 2023, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).