IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03189-PAB-MEH

WILLIAM MONTGOMERY,

    Plaintiff,

v.

ARMANDO CRUZ,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 104]. The recommendation addresses defendant's Motion for Summary Judgment [Docket No. 76]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.  BACKGROUND**

    **A. Undisputed Facts**

The undisputed facts in this case are set forth in the recommendation, Docket No. 104 at 1-4, and neither party objects to the magistrate judge's findings of undisputed facts. *See generally* Docket No. 105. Accordingly, the Court adopts the magistrate judge's undisputed facts for the purpose of ruling on the objections. The undisputed facts are reproduced below.

    1.  On October 23, 2018, Mr. Montgomery visited the Walmart located at 7800 Smith Road in Denver, Colorado. Docket No. 1 at 5, ¶ 5.

2. At approximately 4:45 p.m., Walmart employee Angelo Germain observed Mr. Montgomery leaving the store with merchandise without a bag and no sign of a receipt. Docket No. 76-3 at 1.

3. Mr. Germain asked Mr. Montgomery to show his receipt. *Id.* Mr. Montgomery was immediately "stand offish" to Mr. Germain, refused to show his receipt, and proceeded toward the door. Docket No. 76-4.

4. Officer Armando Cruz ("Officer Cruz") was standing outside the south exit of Walmart when he witnessed the interaction between Mr. Montgomery and Mr. Germain. Docket No. 76-2 at 2, ¶ 6. Officer Cruz overheard Mr. Montgomery refusing to show his receipt to Mr. Germain. *Id.*, ¶ 8.

5. Mr. Montgomery walked out of the south exit of the Walmart with merchandise in plastic bags. *Id.* at 3, ¶ 16.

6. Officer Cruz asked Mr. Montgomery to show his receipt, but Mr. Montgomery refused. *Id.*, ¶ 17.

7. Officer Cruz stepped in front of Mr. Montgomery to prevent him from leaving. *Id.*, ¶ 18. Based on what Mr. Germain had told Officer Cruz[1] and Mr. Montgomery's refusal to show a receipt, Officer Cruz believed Mr. Montgomery had shoplifted. *Id.*

8. Mr. Montgomery became visibly agitated. *Id.*, ¶ 20; Docket No. 76-5 (body-camera video of incident). Mr. Montgomery's eyes were wide, and he began shaking a

---

[1] Mr. Germain told Officer Cruz that Mr. Montgomery approached the south exit from the back of the store, not the cash registers; Mr. Montgomery was carrying items not in a bag; and Mr. Montgomery refused to show his receipt to Mr. Germain. Docket No. 76 at 4, ¶ 14; Docket No. 87 at 2-3, ¶ 14. Mr. Germain told Officer Cruz that he suspected Mr. Montgomery did not pay for the items. Docket No. 76 at 4, ¶ 14; Docket No. 87 at 2-3, ¶ 14.

large yellow bottle at Officer Cruz while continuing to talk over Officer Cruz.  Docket No. 76-2 at 3, ¶ 20; Docket No. 76-5.

9.  Mr. Germain observed this interaction and noted in his statement that Mr. Montgomery began arguing with Officer Cruz and "acting weird like he's trying to run or do something else."  Docket No. 76-3 at 2.  Mr. Germain stated that Mr. Montgomery was talking and moving around "like someone whos [sic] mentally unstable."  *Id*.

10.  Mr. Germain was so concerned with Mr. Montgomery's behavior that he began telling other customers to use a different exit because he felt like Mr. Montgomery "might try to do something."  *Id*.  Mr. Germain also called his manager, Robert Boston, to explain the situation.  *Id*.

11.  Officer Cruz informed Mr. Montgomery "now I'm detaining you" and that "I'm gonna get your name, I'm gonna get your information."  Docket No. 76-5.

12.  Mr. Montgomery put the yellow bottle and plastic bag on the floor.  Docket No. 76-2 at 4, ¶ 24; Docket No. 76-5.  Officer Cruz immediately instructed Mr. Montgomery to put his hands up and keep them where Officer Cruz could see them.  Docket No. 76-2 at 4, ¶ 24; Docket No. 76-5.

13.  Officer Cruz called for backup due to Mr. Montgomery's behavior.  Docket No. 76-2 at 4, ¶ 26; Docket No. 76-5.

14.  Mr. Montgomery began to yell at Officer Cruz regarding Walmart's receipt policy.  Docket No. 76-2 at 4, ¶ 27; Docket No. 76-5.

15.  Officer Chase arrived on the scene per Officer Cruz's request.  Docket No. 76-2 at 4, ¶ 28; Docket No. 76-5.

16. Mr. Montgomery was then placed in handcuffs. Docket No. 76-2 at 5, ¶ 30; Docket No. 76-5.

17. Officer Chase asked Mr. Montgomery if he had any weapons. Docket No. 76-2 at 5, ¶ 31; Docket No. 76-5. Mr. Montgomery denied having any weapons. Docket No. 76-2 at 5, ¶ 31; Docket No. 76-5.

18. After Mr. Montgomery was placed in handcuffs, Officer Cruz began conducting a pat-down search of Mr. Montgomery's person to determine if Mr. Montgomery had any weapons on him. Docket No. 76-2 at 5, ¶ 32; Docket No. 76-5.

19. Mr. Montgomery began yelling. Docket No. 76-5.

20. Officer Cruz removed a wallet, pill bottle, phone, a white package, and liquid radiator sealer product from Mr. Montgomery's pockets. Docket No. 76-2 at 5, ¶ 34.

21. The liquid radiator sealer product, located in Mr. Montgomery's right front pocket, created a "noticeable" bulge. Docket No. 76-2 at 6, ¶ 36; Docket No. 76-5.

22. When Officer Cruz asked Mr. Montgomery what the bulge was, Mr. Montgomery hesitated and responded, "I don't know" and "hold on." Docket No. 76-2 at 6, ¶ 36; Docket No. 76-5.

23. Mr. Montgomery resumed yelling at Officer Cruz. Docket No. 76-5.

24. Officer Chase also conducted a pat-down search of Mr. Montgomery, specifically of his lower body. *Id*.

25. Officer Cruz removed Mr. Montgomery's driver's license from his wallet and informed Mr. Montgomery "I've got your ID." Docket No. 76-5; Docket No. 76-2 at 6, ¶ 40. Mr. Montgomery responded "yeah, like I said, I tried to give it to you." Docket No. 76-5.

26. Mr. Montgomery was then escorted to the police vehicle. Docket No. 76-2 at 6, ¶ 41; Docket No. 76-5.

27. Before putting Mr. Montgomery in the back of the police vehicle, Officer Chase again asked Mr. Montgomery for his receipt of the merchandise. Docket No. 76-5. Mr. Montgomery did not produce a receipt. *Id*.

28. After Mr. Montgomery was handcuffed, searched, and placed in the back of the police vehicle, Officer Cruz asked Walmart loss prevention to conduct a CCTV [security camera] search to confirm that Mr. Montgomery had indeed shoplifted before transporting him to the police station for booking. Docket No. 76-2 at 7, ¶ 43; Docket No. 76-5.

### B. Procedural History

On October 23, 2020, Mr. Montgomery filed a complaint bringing five claims: (1) unreasonable detention against Officer Cruz; (2) unreasonable search and seizure against Officer Cruz and Officer Randy Chavez ("Officer Chavez"); (3) excessive force before arrest against Officer Cruz and Officer Chavez; (4) unlawful arrest against Officer Cruz and Officer Chavez; and (5) excessive force after arrest against Officer Cruz and Officer Chavez. Docket No. 1 at 10-17. On March 14, 2022, the Court accepted the magistrate judge's recommendation to dismiss Mr. Montgomery's first, third, fourth, and fifth claims. Docket No. 57 at 17. On June 2, 2022, the Court granted Mr. Montgomery's motion to dismiss Officer Chavez from this lawsuit after discovery revealed that the person Mr. Montgomery thought was Officer Chavez was instead Officer Chase. Docket No. 74.

On October 17, 2022, Officer Cruz moved for summary judgment on the remaining claim for unreasonable search and seizure.  Docket No. 76.  On February 1, 2023, Magistrate Judge Hegarty issued a recommendation to grant Officer Cruz's motion for summary judgment.  Docket No. 104.  Mr. Montgomery filed an objection, which was docketed by the Court on February 16, 2023.  Docket No. 105.  On March 2, 2023, Officer Cruz filed a response to the objection.[2]  Docket No. 106.  Mr. Montgomery filed a reply.  Docket No. 108.

---

[2] On March 14, 2023, Officer Cruz filed a motion requesting a one-day extension of time, *instanter*, to extend the deadline for filing his response to Mr. Montgomery's objection.  Docket No. 107.  Officer Cruz states that he did not realize that Mr. Montgomery filed his objection on February 15, 2023 because the docket reflects that the objection was filed on February 16, 2023 at 10:16 a.m.  *Id*. at 2, ¶¶ 3-8.  Officer Cruz requests a one-day extension of time, *instanter*, to extend the filing deadline for his response.  *Id*., ¶ 11.  Mr. Montgomery responded to Officer Cruz's motion stating that he filed his objection on February 15, 2023 via email at 4:59 p.m.  Docket No. 109 at 1, ¶ 1.  However, Mr. Montgomery believes that Officer Cruz's response should be "considered as timely filed."  *Id*. at 2, ¶ 6.  The Court's records indicate that Mr. Montgomery emailed his objection to the Court's *pro se* email inbox, COD_ProSe_Filings@cod.uscourts.gov, on February 15, 2023, and the Court received the email at 5:00 p.m.  The Court's filing instructions for *pro se* parties states that "email filings received by the Clerk's Office after 5:00 pm will be filed the next business day."  Email Filing Procedures for Unrepresented Parties, referenced via hyperlink in D.C.COLO.LCivR 5.1(b)(3).  Because the Clerk's office received Mr. Montgomery's objection by 5:00 p.m., the Court considers his objection as timely filed on February 15, 2023.  The Court will order the Clerk's office to change the filing date of Mr. Montgomery's objection, Docket No. 105, to February 15, 2023.  The Court will grant Officer Cruz's motion for an extension of time because the Court finds good cause for the extension.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § I.G.1. ("Motions for extension of time require a showing of good cause.").  Officer Cruz has shown good cause for his belief that the response deadline was March 2, 2023 based on the docket's erroneous indication that Mr. Montgomery's objection was filed on February 16, 2023 at 10:16 a.m.  *See* Docket No. 107; Docket No. 105.

## II. LEGAL STANDARD

### A. Objections to Magistrate Judge Recommendations

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id*.

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because Mr. Montgomery is proceeding *pro se*, the Court will construe his objections and pleadings

liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B. Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary

judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### C. <u>Qualified Immunity</u>

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court should resolve questions of qualified immunity at the earliest possible stage of litigation.  *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.  *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case."  *Pearson*, 555 U.S. at 236.

9

A constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Surat*, 52 F.4th at 1276. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Torres v. Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022). The relevant precedent is "considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Yehia*, 38 F.4th at 1294 (emphasis in original); *see also Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022).

### III. ANALYSIS

The magistrate judge recommends granting qualified immunity to Officer Cruz on the remaining claim for unlawful search and seizure under the Fourth Amendment. Docket No. 104 at 16. The magistrate judge concluded that Mr. Montgomery "was initially stopped and searched as part of an investigative detention, and was not placed under arrest prior to the search." *Id*. at 9. The magistrate judge therefore evaluated the reasonableness of Officer Cruz's actions under the framework of a *Terry* pat-down search, rather than a search incident to arrest. *Id*. at 9-12. Based on the totality of the circumstances, the magistrate judge found that Officer Cruz had reasonable suspicion that Mr. Montgomery was armed and dangerous, and therefore had reasonable suspicion to conduct a pat-down search of Mr. Montgomery. *Id*. at 11-12. However, the magistrate judge found a genuine dispute of material fact as to whether the pat-down

10

search was minimally intrusive.  *Id*. at 12-14.  In discussing the evidence, the magistrate judge stated,

> Plaintiff contends that "[Defendant] barely squeeze[d] Plaintiff's left jacket pocket before inserting one of his hands into it . . . and he barely brushe[d] one of his hands along the outside of Plaintiff's two rear pant pockets before inserting it into the rear left one."  Defendant states that he conducted a pat down but does not provide a detailed account of how exactly he searched for weapons in Plaintiff's pockets.  The body camera footage shows that Defendant searched Plaintiff's left jacket pocket, but it is unclear how thoroughly Defendant patted down the outer portion of Plaintiff's jacket pocket before inserting his hand in the pocket.  Whether this pat-down search was minimally intrusive is a dispute of fact that must be left to the jury.  Therefore, the Court provisionally finds an outstanding issue of material fact as to whether the pat-down search exceeded the scope of a permissible *Terry* stop.

*Id*. at 13-14 (internal citations omitted).  However, the magistrate judge concluded that it was not clearly established that Officer Cruz lacked probable cause to search Mr. Montgomery.  *Id*. at 15-16.  The magistrate judge also found that Mr. Montgomery consented to the seizure of his ID card.  *Id*. at 15.  Accordingly, the magistrate judge recommends granting qualified immunity to Officer Cruz.  *Id*. at 16.

Mr. Montgomery raises three objections to the magistrate judge's recommendation: (1) the magistrate judge failed to account for Officer Cruz's unreasonable search of Mr. Montgomery's right jacket pocket; (2) the magistrate judge's probable cause logic is "completely flawed;" and (3) the magistrate judge erroneously concluded that Mr. Montgomery consented to the search of his wallet.  Docket No. 105 at 2-4.  Officer Cruz filed no objections to the recommendation.

### A. Objection One

Mr. Montgomery first argues that the magistrate judge erred because he failed to account for Officer Cruz's unreasonable search of Mr. Montgomery's right jacket pocket.  *Id*. at 2.  Mr. Montgomery asserts that, while the magistrate judge correctly found a

11

genuine dispute of material fact as to the reasonableness of the search of Mr. Montgomery's other pockets, "the overly intrusive search of Plaintiff's right jacket pocket (the one containing his bottle of prescription medication) absent any meaningful pat down of it, is also a genuine dispute of material fact appropriately left to the jury to decide." *Id*. Officer Cruz responds that the alleged search of Mr. Montgomery's right jacket pocket is immaterial to the resolution of the motion because "the Magistrate Judge correctly found Defendant had probable cause to search Plaintiff – or at minimum, had arguable probable cause to search Plaintiff." Docket No. 106 at 1-2.

An officer is permitted to conduct a pat-down search during an investigative detention if the officer "harbors an articulable and reasonable suspicion that the person is armed and dangerous." *United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006). "The purpose of the limited pat-down search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence." *Id*. at 1063 (citation omitted); *see also Sibron v. New York*, 392 U.S. 40, 65 (1968) ("The search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault."). The search for weapons should be "a limited intrusion." *United States v. Santillanes*, 848 F.2d 1103, 1109 (10th Cir. 1988). "If the officer discovers what he believes to be a weapon, he may reach inside the suspect's clothing and remove it." *United States v. Harris*, 313 F.3d 1228, 1237 (10th Cir. 2002). The subjective belief of the officer is irrelevant; "the constitutional inquiry turns on whether an objectively reasonable officer could have feared that the detected objects might be used as instruments of assault." *United States v. Rochin*, 662 F.3d 1272, 1274 (10th Cir. 2011).

However, an officer violates the Fourth Amendment by immediately reaching into a suspect's pocket without first conducting a pat-down search for weapons. *Sibron*, 392 U.S. at 65; *see also Santillanes*, 848 F.2d at 1109.

If an officer observes "a visible and suspicious 'bulge'" in a suspect's pocket, the officer may "conclude that [the suspect] [is] armed and thus pose[s] a serious and present danger to the safety of the officer," thereby justifying a pat-down search. *United States v. Gurule*, 935 F.3d 878, 886 (10th Cir. 2019) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 112 (1977)). However, an officer cannot automatically remove the object creating the bulge. *See, e.g., United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012) (holding that officer violated the Fourth Amendment by lifting defendant's pants to reveal the "concealed bulge" on defendant's leg "instead of performing a pat down to confirm whether the concealed bulge was a weapon"). If, during the course of the pat-down, the officer feels the bulge and reasonably believes that the bulge might be a weapon, the officer may remove the object causing the bulge from the suspect's person. *Harris*, 313 F.3d at 1237 (holding that officer could reach inside defendant's boot because the officer felt a bulge in the boot when conducting the pat-down and thought the bulge "might be a gun"); *United States v. Albert*, 579 F.3d 1188, 1196 (10th Cir. 2009) (holding that the officer "must have reasonably believed the tourniquet was a weapon in order for its seizure or a further search to be permissible").

The magistrate judge's recommendation does not discuss the search of Mr. Montgomery's right jacket pocket. The Court finds that Mr. Montgomery has raised a genuine dispute of material fact as to whether the search of his right jacket pocket violated the Fourth Amendment. Officer Cruz argues that he conducted a pat-down

13

search before reaching into Mr. Montgomery's pockets.  Docket No. 76 at 16.  Mr. Montgomery denies that claim.  Docket No. 87 at 4, ¶ 27.  Mr. Montgomery's affidavit states that, immediately after Mr. Montgomery told the officers that he did not have any weapons, "CRUZ inserted one of his hands directly into my right jacket pocket, whereby he removed a bottle of prescribed medication from inside of it.  I observed the Officer perform no meaningful 'pat down' of this right jacket pocket prior to reaching into it."  Docket No. 87-1 at 3, ¶¶ 21-22.  The body camera footage shows Officer Cruz holding a bottle of prescription medication near Mr. Montgomery's right jacket pocket, but it is unclear from the footage whether Officer Cruz patted down the outer portion of Mr. Montgomery's right jacket pocket before retrieving the prescription bottle.  *See* Docket No. 76-5 at 3:58-4:07; *see also* Docket No. 76-6 at 0:48-0:57.  Furthermore, even if Officer Cruz performed a pat-down of Mr. Montgomery's right jacket pocket, Officer Cruz has failed to show that it is undisputed that a reasonable officer would believe that the prescription bottle, as felt through Mr. Montgomery's jacket pocket, might be a weapon.  Viewing the facts in the light most favorable to plaintiff, Mr. Montgomery has raised a genuine dispute that the search of his right jacket pocket violated the Fourth Amendment.  The Court therefore sustains Mr. Montgomery's first objection.[3]

### B. Objection Two

Mr. Montgomery next argues that the magistrate judge's probable cause logic is "completely flawed."  Docket No. 105 at 3.  Mr. Montgomery claims that the magistrate judge improperly validated the search "using probable cause alone, when no such

---

[3] For the reasons discussed below, the Court rejects Officer Cruz's argument that the search of Mr. Montgomery's right jacket pocket is immaterial.

underlying 'custodial arrest' of him actually occurred." *Id*. at 2.  Mr. Montgomery argues that there is no exception for a "search incident to probable cause to arrest." *Id*.  Officer Cruz responds that he is entitled to qualified immunity because Mr. Montgomery, the magistrate judge, and defendant have found no clearly established law showing that Officer Cruz lacked probable cause to search Mr. Montgomery under the circumstances in this case.  Docket No. 106 at 4.  Officer Cruz also argues that the "Tenth Circuit has not gone so far as to expand the search incident to arrest doctrine to situations where no arrest occurred – but it should." *Id*. at 3.

The magistrate judge found that it was not clearly established that Officer Cruz lacked probable cause to search Mr. Montgomery.  Docket No. 104 at 15-16.  In support of this finding, the magistrate judge cites a Tenth Circuit case involving Mr. Montgomery, *Montgomery v. Calvano*, 2022 WL 1132212, at *2 (10th Cir. Apr. 18, 2022) (unpublished). *Id.* at 15.  However, that case only involved a claim for unlawful arrest and did not involve a claim for unreasonable search.  *Calvano*, 2022 WL 1132212, at *1.  The Tenth Circuit in *Calvano* discussed probable cause in the context of Mr. Montgomery's arrest.  *Id.* at *1-2.  However, the magistrate judge here found that Mr. Montgomery was not under arrest at the time of the search.  Docket No. 104 at 9.  The Court therefore finds that the Tenth Circuit's holding in *Calvano* is not on point.

The Court previously found that it is clearly established that "a pat-down search must be limited to a search for weapons and minimally intrusive.  A pat-down search that immediately begins with a reach into the suspect's pockets is not minimally intrusive."  *Montgomery v. Cruz*, No. 20-cv-03189-PAB-MEH, 2022 WL 765877, at *5 (D. Colo. Mar. 14, 2022); *see also Sibron*, 392 U.S. at 65 (holding that the officer

15

violated the Fourth Amendment by immediately reaching into the suspect's pocket to remove envelopes of heroin without first conducting a pat-down); *Santillanes*, 848 F.2d at 1103.  Mr. Montgomery has cited evidence creating a genuine dispute of material fact that Officer Cruz inserted one of his hands into Mr. Montgomery's right jacket pocket without first performing a pat-down of the pocket.  Docket No. 87-1 at 3, ¶ 22; *see also* Docket No. 76-5 at 3:58-4:07; Docket No. 76-6 at 0:48-0:57.  Accordingly, the Court finds that Mr. Montgomery has shown that this conduct, if true, violates clearly established law.  The Court therefore sustains Mr. Montgomery's second objection and overrules the portion of the magistrate judge's recommendation to grant qualified immunity to Officer Cruz.  The Court finds that Officer Cruz is not entitled to qualified immunity on Mr. Montgomery's remaining claim.

### C. Objection Three

Finally, Mr. Montgomery argues that the magistrate judge erred in concluding that Mr. Montgomery consented to the search of his wallet.  Docket No. 105 at 3.  The magistrate judge found that Mr. Montgomery consented to the seizure of his ID card based on Mr. Montgomery's statement during the search that he was going to give Officer Cruz the ID card anyway.  Docket No. 104 at 15.  Mr. Montgomery argues that he never consented to the search of his wallet and his statement was "improperly retroactively applied to the search."  Docket No. 105 at 3.  Mr. Montgomery argues that "[w]hatever 'consent' the Magistrate Judge purports to have existed, was actually and strictly premised on Plaintiff's concern to provide his ID in order to not obstruct the officer during his investigation."  *Id*.  Officer Cruz argues that Mr. Montgomery's "desire

to provide his ID in order to not obstruct an investigation objectively shows Plaintiff consented to the production of his ID." Docket No. 106 at 4.

Consent to a seizure must be freely and voluntarily given. *United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996). A person being detained may provide valid consent. *United States v. Soto*, 988 F.2d 1548, 1557 (10th Cir. 1993). The voluntariness of consent must be determined from the totality of the circumstances. *Id*. The Court uses an objective reasonableness standard, asking whether a reasonable officer would have understood from the exchange that the suspect consented to the seizure. *See United States v. Flores*, 48 F.3d 467, 468-69 (10th Cir. 1995). "The government bears the burden of proving the voluntariness of consent." *United States v. Fernandez*, 18 F.3d 874, 881 (10th Cir. 1994); *see also United States v. Shrum*, 908 F.3d 1219, 1233-34 (10th Cir. 2018) (noting that the government has a "heavier burden" when consent follows an illegal seizure). "Generally speaking, consent given *after* a search and seizure is not valid consent." *United States v. Craven*, 2005 WL 8163891, at *5 (D.N.M. Apr. 1, 2005); *see also United States v. Carson*, 793 F.2d 1141, 1153 (10th Cir. 1986) ("We agree that voluntary consent to search given after an illegal search, does not transform the prior illegal search into a legal one."); *United States v. Gilmer*, 793 F. Supp. 1545, 1553 (D. Colo. 1992) ("As the Government properly conceded in closing argument, the written consent is of no weight, since it was obtained after the search.").

The magistrate judge found that there is a dispute of fact as to whether the search of Mr. Montgomery's pocket containing the wallet was minimally intrusive. Docket No. 104 at 13-14. However, the magistrate judge found that Mr. Montgomery

consented to the seizure of his ID card.  *Id*. at 15.  It is undisputed that Officer Cruz removed Mr. Montgomery's wallet from his pocket.  *Id*. at 3, ¶ 20.  Officer Cruz then removed Mr. Montgomery's driver's license from his wallet and informed Mr. Montgomery, "I've got your ID."  *Id*. at 4, ¶ 25.  Mr. Montgomery then responded, "[Y]eah, like I said, I tried to give it to you."  *Id*.  Mr. Montgomery's statement regarding consent occurred after Officer Cruz seized Mr. Montgomery's ID card.  *See Gilmer*, 793 F. Supp. at 1553.  The video provides no evidence that Mr. Montgomery consented to the search of his pocket containing his wallet before Officer Cruz removed the wallet from Mr. Montgomery's pocket.  Officer Cruz has not met his burden of proving that Mr. Montgomery consented to the search of his wallet or the seizure of his ID card.  *See Fernandez*, 18 F.3d at 881.  Accordingly, the Court sustains Mr. Montgomery's third objection and overrules the portion of the magistrate judge's recommendation concluding that Mr. Montgomery consented to the seizure of his ID card.

### D. Non-Objected to Portions of the Recommendation

The magistrate judge found that Mr. Montgomery was not under arrest at the time of the search, but rather was detained pursuant to an investigative stop.  Docket No. 104 at 9.  The magistrate judge also found that Officer Cruz had reasonable suspicion that Mr. Montgomery was armed and dangerous and therefore had reasonable suspicion to conduct a pat-down search of Mr. Montgomery.  *Id*. at 11-12.  Neither party objected to these portions of the recommendation.

The Court has reviewed the non-objected to portions of the recommendation to satisfy itself that there is "no clear error on the face of the record."  *See* Fed. R. Civ. P.

72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that these portions of the recommendation are a correct application of the facts and the law.

### IV.     CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 104] is **ACCEPTED in part** and **REJECTED in part**.  It is further

**ORDERED** that Plaintiff's Objection to the Magistrate Judge's Report & Recommendations [Docket No. 105] is **SUSTAINED**.  It is further

**ORDERED** that defendant's Motion for Summary Judgment [Docket No. 76] is **DENIED**.  It is further

**ORDERED** that Defendant Cruz's Motion for Extension of Time Instanter [Docket No. 107] is **GRANTED**.  It is further

**ORDERED** that the Clerk of the Court is directed to change the filing date of Mr. Montgomery's objection, Docket No. 105, to **February 15, 2023**.

DATED September 11, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge